Minute Order Form (06-97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 CR 461 | **DATE** | 11/23/2004 |
| **CASE TITLE** | USA vs. Roy Drees | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, defendant's motion to quash arrest and suppress evidence is granted. Enter Memorandum Opinion and Order. Defendant's bond is modified to include mental health treatment. Order to follow. Status hearing set for 12/9/04 at 11:00 a.m. Time is ordered excluded to 12/9/04 pursuant to 18:3161(h)(8)(A)(B). (x-t).

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 2 4 2004 | |
| | Notified counsel by telephone. | | date docketed | 30 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MF | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03 CR 0461 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| ROY DREES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On May 6, 2004, a federal grand jury returned a two-count indictment charging Defendant, Roy Drees, with manufacturing counterfeit currency and possessing counterfeit currency. Subsequently, Defendant filed a Motion to Quash Arrest and Suppress Evidence; and the parties filed briefs in support of their respective arguments. The parties agree that an evidentiary hearing on the motion is not necessary.

The facts underlying the arrest and the search of the Defendant's residence are generally not in dispute and are summarized below based on the parties' briefs.

At approximately 1:00 a.m. on January 7, 2004, Chicago Police Department officers curbed a red Ford hatchback driven by Maysa Qaesm at 3531 W. Augusta for improperly pulling out of a parked position. As they approached the vehicle, the officers observed the sole passenger, Drees, put a white object in the arm rest of the passenger side door. The officers asked Drees and Qasem to exit the vehicle. Once outside the vehicle, Officer Camarillo looked in the arm rest of the passenger side door and found a clear bag containing a white powder substance that the officers



believed to be cocaine. Officers also patted down both Drees and Qasem, finding a clear bag on Drees containing a white powder substance that the officers believed to be heroin. The officers placed Drees and Qasem under arrest for possession of cocaine and heroin and transported them to the 11th District.

Upon arrival at the 11th District, the officers booked Drees and Qasem. Qasem had a purse in her possession, which Officer Camarillo took into custody at the time of her arrest. Shortly thereafter, he opened the purse and found $85 in, what the officers believed was, counterfeit currency. Qasem told Officer Camarillo that she and Drees had been making counterfeit currency for two months. She further explained that she and Drees were using the counterfeit currency to purchase items at grocery stores. Subsequently, Officer Camarillo contacted United States Secret Service Special Agent Brad Boydston and told Agent Boydston about finding counterfeit currency in Qasem's purse.

Agent Boydston went to the 11th District and confiscated the $85 in counterfeit currency. Agent Boydston then read Qasem her *Miranda* rights, which she waived in writing at approximately 3:50 a.m. Qasem then gave a statement to Agent Boydston in which she admitted to having counterfeit currency in her possession at the time of the January 7, 2004 arrest; but she denied having manufactured that currency. Qasem stated that Drees was printing the counterfeit currency at his mother's house on North Whipple, where Qasem and Drees were temporarily living. Qasem provided Boydston with written consent to search the home of Drees's mother. Drees refused to speak with Agent Boydston. Agent Boydston, therefore, did not question Drees regarding Qasem's statement.

Agent Boydston went to North Whipple where he met Drees's mother and stepfather. Drees's mother stated that she and Drees's stepfather rented the home of Drees's stepfather's sister. Drees and Qasem had been living rent-free in a room at their home on and off for a few months. Drees's mother noted that the door to the room in which Drees and Qasem were living was not locked and that she often went into the room to take care of common household tasks. Drees's stepfather told Agent Boydston that he had seen Drees making counterfeit currency in his room. Drees's mother provided Agent Boydston with written consent and Drees's stepfather provided Agent Boydston with verbal consent for law enforcement to search their home.

During the search, Agent Boydston found the door to the room in which Drees and Qasem stayed open and unlocked. Inside the room, Ageny Boydston found $105 in counterfeit currency, an HP Printer-Fax-Copier-Scanner, a box of linen paper, and an X-Acto paper cutter. He also found 8-1/2 x 11 sheets of paper with ten images of $20 bills, one image of a $10 bill, and one image of a $1 bill between the mattress and box spring.

Shortly after her arrest, Qasem was released without charges. The Cook County State's Attorney charged Drees with two counts of possession of a controlled substance. On February 3, 2004, Drees appeared before the Honorable Judge Williams, Cook County Circuit Court Judge, for a preliminary hearing. During the hearing, Officer Camarillo testified regarding the traffic stop and subsequent arrest of Drees and Qasem. At the close of the hearing, Judge Williams made, without further explanation, a finding of no probable cause and dismissed the case against Drees. On May 6, 2004, a federal grand jury returned a two-count indictment against Drees for manufacturing and possessing counterfeit currency.

The Government concedes that Drees's arrest on January 7, 2004 was an "illegal arrest." However, the Government argues that the taint of Drees's illegal arrest was sufficiently attenuated to allow the admission of evidence related to the counterfeiting charges in federal court.

The exclusionary rule prohibits the government from introducing evidence of guilt at a defendant's trial that was obtained through violations of the Fourth Amendment. *See United States v. Leon*, 468 U.S. 897, 906 (1984). Evidence that would not have come to light but for an illegal action by the police, *i.e.*, fruit of the poisonous tree, however, is not automatically suppressed. *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963) (*Wong Sun*); *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975) (*Brown*). The test for admission of evidence obtained through a causal chain that began with an illegal arrest is "'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Wong Sun*, 371 U.S. at 488, quoting Maguire, *Evidence of Guilt*, 221 (1959). "Thus, if the causal chain between the initial illegality and the evidence sought to be excluded is broken, the link to the evidence is sufficiently attenuated to dissipate the taint of illegal conduct." *United States v. Ienco*, 182 F.3d 517, 526 (7th Cir. 1999) (*Ienco*). This attenuation doctrine has been used to support the admission of evidence obtained during consensual searches following illegal seizures. *See e.g., United States v. Thompson*, 106 F.3d 794 (7th Cir. 1997).

The factors for determining whether the causal chain is sufficiently attenuated to dissipate the illegal arrest are: (1) the time elapsed between the illegality and the acquisition of the evidence, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct. *Brown*, 422 U.S. at 603-04.

4

The time elapsed between Drees's illegal arrest and the questioning of Qasem, which led to the search of Drees's residence, was less than four hours, as measured from the time of Qasem's waiver of her *Miranda* rights read by Agent Boydston after his arrival at the 11th District. This relatively short period of time until the search and seizure at the North Whipple premises is insufficient to dissipate the effect of the illegal arrest and favors suppression. *See Taylor v. Alabama*, 371 U.S. 471, 691 (1963) (*Taylor*) (evidence excluded after six-hour elapse in time).

Furthermore, there are no intervening circumstances to sever the causal connection between the illegal arrest and the discovery of evidence against Drees. The Government relies upon Qasem's post-arrest "voluntary" statements following being advised of her *Miranda* rights. However, *Miranda* warnings by themselves are insufficient to purge the taint of an illegal arrest. *See Brown*, 422 U.S. at 605; *Taylor*, 457 U.S. at 690. The Government also relies upon the consent by Drees's mother and stepfather to search the Whipple residence. However, there are no intervening circumstances to sever the causal connection between the illegal arrest, which was exploited by Agent Boydston, who later elicited the consent to search the Whipple residence. Without the illegal arrest of Drees and Qasem, the Government would not have had the information concerning the presence of the alleged counterfeit currency at the Whipple residence which led directly to the Government's obtaining the consent for the search and seizure.

Lastly, while presently there is no evidence of police misconduct (although the initial stop of the vehicle for "violation of pulling from a parked position" is curious at least), "the lack [of] such misconduct is of no moment because there was no intervening event to break the connection to the initial arrest." *Ienco*, 182 F.3d at 528.

5

For the reasons stated above, Defendant's Motion to Quash Arrest and Suppress Evidence is granted.

Dated: November 23, 2004

JOHN W. DARRAH
United States District Judge